The opinion of the court was delivered by
Marr, J.
This suit was brought to recover the balance of an account alleged to be due for materials furnished to Cronan, and used in the construction of St. Patrick’s Hall.
The petition charges that the St. Patrick’s Hall Association is indebted to Cronan under the contract with him in an amount exceeding plaintiff’s demand; and that plaintiff served on the association a duly certified statement of the materials furnished by him, and caused registry of the same to be made in the office of the recorder of mortgages. The prayer is for judgment against Cronan and the association, in solido, with lien and privilege on the building known as St. Patrick’s Hall, and the ground on which it stands.
Cronan admits that he purchased the materials, but denies that he is indebted for them; and he specially denies that plaintiff has any privilege or preference. The association pleads a general denial; and specially denies that plaintiff has any privilege as claimed by him.
Eosdick & Co., by intervention and third opppsition, claim to be paid by preference the balance of an order given by Cronan to them, on the tenth June, 187J, payable out of the money coming to him for work done and materials furnished for the building, alleged to have been accepted by the association, verbally, on the day of its date, payable *994 whenever Oronan should be entitled to the amount free from any privilege or lien claims against him on the funds.
To this petition Cronan and the association answered by general denial. Schwartz in his answer alleges that the order relied upon by intervenors has no legal existence; that it was given without valid consideration ; that it has not been accepted by the association ; and that intervenors ought not to be paid out of the money in the hands of the association in preference to him.
There was judgment in favor of Schwartz, against Cronan, for $301 38, and against the association for $500, with privilege on the funds in the hands of the association on the8th August, 1874, due to Cronan; and the residue in the hands of the association was reserved for ulterior adjudication. Eosdick & Co. and the association appealed separately; and Schwartz, in answer to the appeal, prays that the judgment may be so amended as to decree in his favor against the association the full amount of his demand, with lien and privilege on the funds belonging to Cronan, under his contract, in the hands of the association on the eighth August, 1874; and that “in other respects the judgment of the lower court be affirmed.”
The account sued on was sufficiently proven as against Cronan; and the order relied upon by intervenors was shown to have been given In settlement of a judgment in their favor, rendered against Cronan in January, 1874. This order was given to the attorneys of intervenors. It was presented by them to John Henderson, the vice-president, who represented and acted for the association in all that pertained to -the building of the hall. Henderson verbally accepted the order in the terms alleged, and it was left with him for payment; and he afterward made the two payments on account of it, as stated in the petition.
Cronan undertook to furnish certain iron work for the building, to put up the railing of the galleries, and to furnish mechanics to bolt and secure his cast iron work on Camp street, whatever that may have been, for the gross sum of $5070, without specification of the price of the sevei’al parts, except, so much for the east-iron work, and so much for the wrought-iron work. There was no agreement as to when any part of this work was to be commenced or completed, nor as to when or how the payment was to be made. His agreement, such as it was, was not registered in the office of the recorder of mortgages ; and, therefore, he was entitled to no privilege, and Schwartz could derive none from him by subrogation, or otherwise.
The privilege which the law grants to undertakers, workmen, and the furnishers of materials is, specifically, on the building and the lot of ground, not exceeding one acre, on which it is erected, R. C. C. 2772, 3249; and this is precisely the privilege which plaintiff asserted, and *995 ¡sought to have enforced. We are relieved of the necessity of inquiring whether plaintiff had acquired and preserved this privilege in his owrt right, under articles 3249, 3272, of the R. 0. 0., because the judgment of •the district court did not allow him this privilege, but accorded him a privilege on the money due Oronan, in the hands of the association, on -the eighth August, 1874, the date at which plaintiffs claim seems to have been registered in the office of the recorder of mortgages, and at which he delivered a statement of his account to the president of the association. Plaintiff did not appeal from this judgment; and in his prayer for amendment of the judgment he asks that he may be •allowed the same privilege on the money for the whole amount, instead of for part only of his demand; and that the judgment appealed from ■be in other respects affirmed. This is an acquiescence in the judgment disallowing the specific privilege asserted and demanded in the petition ; and, while we incline to the opinion that he had no privilege on the 'building and lot of ground on which it is erected, we go no further ¡now than to say that we have no power to review the judgment in so 'far as it disallows that privilege, because plaintiff did not appeal; and ■because of his prayer for the affirmance of the entire judgment, excépt as to the amount allowed him against the association.
Cronan was not an undertaker, in the ordinary sense of the term. 'St. Patrick’s.Hall was not built by an undertaker of the entire work. The different parts were done by persons whose bids or offers were ■accepted; and Cronan’s bid for cast and wrought iron work to be used in the construction of the building, and for putting up the railings of the galleries, was accepted. In great part his undertaking was to furnish materials which those who constructed the building were to use •and put in place.
Schwartz did not deal with the association. He sold to Cronan, at different times, in April and May of 1874, sundry lots of old iron, principally cast iron, which was not in a condition to be used in the building. The testimony makes it quite uncertain as to what part of the iron sold by him to Cronan was used in the building; but so much of it as was applied to that purpose was melted at Cronan’s works, just as if it had been pig iron, and was cast into the shapes and patterns required in the ‘construction of the building. He is to be dealt with, therefore, as the furnisher of raw material to a manufacturer who wrought and fashioned it into the perfected material which he, the manufacturer, had undertaken to furnish to the owner, to be used in the construction of -the building.
Under the Code, the person who has contracted with the undertaker, ¡and not with the owner, of the building, has these remedies:
1. By art. 2770 of the R. C. C. masons, carpenters, and other work *996 men, those who, in the language of Troplong, have done un travail manueV in the construction of a building, may bring a direct action against the-owner, and may recover of him up to the amount which may be due by him to the undertaker at the time of the commencement of their action.
This article was copied into the Code of 1808, page 386, article 78, from the Code Napoleon, article 1798; and it was incorporated in the-Civil Code of 1825, as article 2741, and in the R. C. C. as.article 2770,' without change. By its terms it does not include the furnisher of materials ; and the French commentators and jurisprudence agree that he is-excluded from its benefits. Troplong, Échange et Louage, 3, p. 260, number 1052 ; Marcadé, 6, p. 545 ; Guesdon c. Nannet, Sirey & Yilleneuve, 1846, part 2, p. 262. It is a remarkable fact that neither the Code-Napoleon nor the Louisiana Code of 1808 granted any privilege to thefurnisher of materials. The Code of 1825 granted him a privilege only where he supplied the owner with materials which were actually used in the work. C. C. article 3216, number 3. It would seem from a comparison of this article with article 2743, R. C. C. article 2772, that a privilege-on the building was allowed only to those who were employed directly by the owner, who contracted with him.
2. By article 2773, which is copied from the Code of 1825, article-2741, workmen, and those furnishing materials, who have contracted with the undertaker, may cause the moneys due him by the owner to be seized ; and they are, of right, subrogated to his privilege on the building. By article 2774, this right of seizure extends to payments which the owner may have made to the undertaker by anticipation, that is, in advance of the time of payment fixed by the contract between the owner and the undertaker. See Baldwin’s case, 11 La. 453.
3. As the furnisher of materials is not included in the terms of article 2770, Schwartz could not have brought suit under that article; and as Cronan, with whom alone he dealt and contracted, had no privilege, Schwartz acquired none from him by subrogation ; and, therefore, he could have proceeded under article 2773 only by seizing in thehan-ls of the association the moneys due to Cronan, including any payments the association may have made to Cronan in anticipation. As-Schwartz did not proceed under this article, he is remitted to the act originally passed in 1844, re-enacted in 1855, and in the Revised Statutes-of 1870, and incorporated in the R. C. C. as an addendum to art. 2772.
This Act was entitled originally “ An Act to amend article 2744 of the Civil Code, to promote the better security of mechanics and others-erecting buildings or furnishing materials, in the State of Louisiana.” 1844, page 34. In 1855, page 327, it was re-enacted under the title, “An Act relative to mechanics’ lien.” In the Revised Statutes, it is placed iru the title “privilege,” under the heading, “enforcement of mechanics’ *997 lien,” p. 561, see. 2879 et seq.; and in the R. O. 0. it is inserted between ■article 2772, which was article 2743, and article 2773, which was article !2744. This whole matter would have been greatly simplified • if the original design of the Legislature had been carried out, and this act had been accepted and treated as an amendment to article 2744; and if .articles 2741, now 2770, and 2745, now 2774, had been stricken out and ■omitted in the Revised Civil Code. We must take the law as we find it, not as we think it ought to have been, and endeavor to ascertain the rights of litigants, in accordance with its terms and provisions.
The first section of this act authorizes workmen, etc., employed by a contractor, to deliver to the owner an attested account of the work they have done, and for which they have not been paid; and, thereupon, such owner shall retain, out of his subsequent payments to the ■contractor the amount of such work and labor, for the benefit of the person so performing, etc.;” and section five extends all the provisions of the act to the furnisher of materials.
Section two makes it the duty of the owner to furnish his contractor with a copy of such attested accounts, in order that, if there be any ■disagreement between the contractor and these workmen and furnishers -of materials, his employees and creditors, it may be adjusted amicably between them, or by arbitration. In case of failure of the contractor within ten days after the receipt by him of such copies to give the ■owner notice that he intends to dispute the claim, or if, in ten days after giving such notice, he shall refuse or neglect to have the matter adjusted, he shall be considered as assenting to the demand and the owner shall pay the same when it becomes due.
Section three provides for the adjustment of these accounts, and the ascertaining and fixing of the amount due, in case of dispute, by arbitration, on the agreement of the parties to submit the matter: the award of the arbitrators, in writing, to be final and conclusive.
Section four provides that, whenever the amount due shall be adjusted, as provided in sections two arid three, if the contractor shall not within ten days after it has been so adjusted and ascertained pay ■the sum due to the creditor, with the costs incurred, the owner shall pay the same out of the funds, as provided ; and the amount due may be recovered from the owner by the creditor of the contractor, and the creditor shall be entitled to the same privileges as the contractor, to whose rights the creditor “shall have been subrogated,” to the extent In value of any balance due by the owner to the contractor, under the contract with him, at the time of the first giving of the notice, or subsequently accruing to the contractor,.if such amount shall be less than the •sum due from the contractor to his creditor.
Section six defines the payment by .anticipation to be that which is *998 made by the owner to the contractor in advance of the sum due on the-contract; and if the amount still due the contractor after such payment shall be insufficient to satisfy the demand made for work and labor done, or materials furnished, the owner si all be liable to the amount, that would have been due at the time of his receiving the account, in-the same manner as if no such payment had been made.
There is some difficulty in construing this act, and in applying it to the case under consideration:
1. By the terms of section one it seems to be limited to those cases-in which the building is constructed under a contract between the owner and the builder, or other person undertaking the whole work. As this-is a remedial statute it should be construed liberally ; and it would be but reasonable to apply it to all building contracts, whether the different parts are undertaken by different contractors, or the whole work is-undertaken by a single contractor. St. Patrick’s Hall was not undertaken by a single contractor; and the claim of Schwartz is for raw-material sold by him to a person who had contracted to furnish a large amount of manufactured, perfected material, and to do but a very small part of the work of construction. In a letter addressed to the-president of the association by Cronan, April 8, 1874, containing his entire proposition, which was accepted, and became the contract between him and the association, he says :
“ In my bid I propose to put up the railing of the galleries, and to-furnish mechanics to bolt and secure my east-iron work on Camp street front. The balance of the work can be placed as they progress.”
He then gives a detail of the cast-iron work, without any mention of the prices, or reference to any labor to be done, ending with a statement of the gross sum, total price, $3144 95. This is followed by a-detail of the-wrought-iron work, without mention of prices, or reference to work or labor to be done, closing thus : “Total, $2455 05. Cast-iron,. $3144 95; wrought-iron, $2455 05 ; total, $5000. Less estimated deduction in size, etc., of above mentioned wrought-iron work, etc., details of which I left with Mr. Freret, $530. Bid now stands $5070, with alterations and amendments above stated.
“ Accepted.
“(Signed) GEORGE CRONAN,
JOHN HENDERSON.” '
The price or value of the work and labor to be done was manifestly small, and was included in the gross price of the material; so that it can not be ascertained from the contract.
The testimony shows that Cronan used some part of the iron purchased of Schwartz in work for other persons: that he purchased $500-worth of iron at one time from Schwartz, for which he paid cash; and *999 that this iron was used for St. Patrick’s Hall. That he purchased iron from other persons; that the raw material was dumped at his foundry confusedly, and put into the furnace and cast confusedly; that no account was kept at the foundry by which it could be shown what part of each purchase of raw material was used for any special work; and that it could not be stated otherwise than approximately what part of the iron mentioned in the account or statement of Schwartz was used for the perfected material furnished by Cronan to St. Patrick’s Hall.
It also appeal's that Cronan paid Schwartz $200, credited in the account under date May 16. Cronan says this payment was for material used by him for the hall; and, according to his estimate, not more than $300 to $400 worth of the iron charged in the account of Schwartz was used for the work on the hall, on account of which he paid the $200.
If it be conceded that Cronan was such a contractor, and that Schwartz was such a furnisher of materials as the act contemplates, it seems clear that the statement, or “attested account,” to be delivered to the owner of the building must be limited to the materials furnished to be used and actually used in the work done on the building; and that it is not a compliance with the law to deliver to the owner an account the greater part of which is for materials used for other purposes.
2. Sections 2, 3, 4, of the act, contemplate and provide for those cases only in which the owner of the building, having received the attested account, furnishes a copy to the contractor; and the amount due by the contractor is adjusted, ascertained, and fixed, either by the failure of the contractor to give the owner notice of his intention to dispute the claim ; or by amicable arrangement; or by arbitration ; or by the neglect or refusal of the contractor to have the matter adjusted. It is evident from the mere reading of section four that the action which it authorizes the creditor of the contractor to bring against the owner is for the recovery of the amount, as it has been adjusted, ascertained, and fixed, in some one of the modes pointed out with so much precision in sections two and three. It does not authorize or enable the creditor to sue the owner for any other sum or amount, nor for this precise sum, until, by this preliminary adjustment and final and conclusive fixing of the amount, as between the contractor and his creditor, the contractor shall be in default by failing to pay the sum due within ten days.
In the erection and finishing of a large building, under a contract with an undertaker of the whole work, there might be several hundred persons, many of them creditors for small amounts, who would come within the comprehensive terms of the act, furnishers of materials, mechanics, workmen, journeymen, laborers, cartmen, sub-contractors, and other persons doing or performing any work toward the erection, construction, and finishing of any building, etc., all of whom might deliver *1000 attested accounts to the owner ; and it would require no small amount of clerical labor and of time to make copies of such accounts, and to furnish them to the undertaker. This labor would be increased in case there were several different contracts for the different parts of the work. If, from any cause, the owner should fail or not choose to take upon himself this burden, the act has made no provision for any other means of effecting a compulsory adjustment, or of putting the undertaker or contractor in default. It might have been well for the Legislature to have required the creditors themselves to deliver copies of their attested accounts to the undertaker, and thus to have enabled them to compel a speedy adjustment, as between the undertaker and themselves, and to recover, with the least delay practicable, the money duo them for wages cr materials, with or without suit.
As the act itself has not provided for the failure or refusal, of the owner to assist these creditors of the undertaker in the adjustment and recovery of the amounts due them, the only consequence is that they can not avail themselves of the remedy, because the prescribed conditions upon which depends the right to resort to that remedy have not been realized ; and they must seek redress by some other means.
Articles 2741 and 2741 of the Civil Code were in force at the time the . act of 1841 was passed ; and they figure in the Revised Code, without change or amendment, as articles 2770 and 2778. Article 2770 is limited to “masons, carpenters, and other workmen; but article 2773 includes “ workmen, and persons furnishing materials.” These articles and the act of 1844 all relate to persons employed by and contracting with unle:takers. The act of 1844 instead of appearing as an amendment to article 2773, corresponding with article 2744 of the Civil Code, is a part of article 2772, which was 2743 of the Civil Code.
The first clause of article 2772 gives the undertaker a privilege on the building ;' and the second clause gives the same privilege to workmen employed immediately by the owner. Then follow the six sections of the act of 1844, as clauses of this article which relate exclusively to those who have contracted with the undertaker. No privilege is given them on the building, except as subrogees of the undertaker. They may acquire a right of action against the owner directly; but only, ex vi termini, when the conditions prescribed by that act harm been fulfilled.
Then follows article 2773, which was 2744 of the Civil Code, which declares that “ workmen, and persons contracting with the undertaker, have no action against the owner who has paid him. If the undertaker be not paid, they may cause the moneys due him to be seized ; and they are of right subrogated to his privileges.”
The compilers of the Code probably foresaw that cases would arise in which workmen and furnishers of materials would not be able to *1001 avail themselves of the right of action conferred by section four of the a,et of 1844, clause six of article 2772 of the R. 0. 0., by reason of the failure to have an adjustment and fixing of the amount due by the contractor, and the consequent inability to put him in default, a pre-requisite to suit against the owner ; and they, therefore, retained article2770, which gives the right of action to “ masons, carpenters, and other workmen,” which is limited to the amount due by the owner to the undertaker at the time of the commencement of the suit. This article would afford no relief to the furnisher of materials; and so they retained article 2773, which includes “workmen, and persons furnishing materials.”
The action which is authorized by article 2770 is against the owner: “the action authorized by the act of 1844 is against the owner; but the action authorized by article 2773 is against the undertaker, and the ■owner is made party by the seizure in his hands. Neither article 2773 nor the act of 1844 gives' to the person who has contracted with the undertaker any lien or privilege, except as subrogee to such privilege as the undertaker may have acquired and preserved. The act of 1844, section four, gives the creditor the same privilege as the contractor is ■entitled to, and none other. The whole theory of this act is that where the workman, etc., has brought himself within its terms, the owner of The building becomes his debtor, and may be sued directly, and compelled to pay the amount ascertained, as provided in sections two and •three, to be due to him by the contractor, up to the amount due and to become, due by the owner to the contractor. If the contractor has taken the precaution to preserve the privilege accorded to him by law on the building, the workman, etc., will be secured by that, privilege as legal subrogee; but, otherwise, that act gives him no privilege. The act entitles the creditor, workman, or furnisher of materials to be paid out -of the money due and owing to the undertaker; but neither the act nor •any article of the Code gives any privilege on the funds' in the hands of the owner, except where the creditor, by the adjusting of his account, is entitled to sue and to recover of the owner.
Plaintiff has not brought himself within any law authorizing him to proceed by direct action against the association ; nor conferring on him .any privilege on the funds of or money due to Cronan in the hands .of the association.
Precisely at what time the draft of Cronan, sued on by intervenors, 'became exigible we are not informed ; but it operated a transfer of so •much of the money in the hands of the association due to Cronan, from the date of the acceptance. Two payments, one of $350, September 12, 1874, the other of $450, May 10, 1875, have reduced the amount to sixteen hundred and sixty-one dollars and thirty-two cents ($1661 32). *1002 There is no prayer for interest in the petition; and we think substantial justice will be done by allowing interest from judicial demand, under the prayer for general relief.
It is therefore ordered, adjudged, and decreed that the judgment of the District Court, except that part of it which is in favor of Louis Schwartz against George Cronan, which was not appealed from and is not to be disturbed by this decree, be annulled, avoided, and reversed ; that the demand of Louis Schwartz against St. Patrick’s Hall Association be rejected with costs ; that George A. Eosdick & Co., intervenors,. do have and recover of and from the St. Patrick’s Hall Association the sum of sixteen hundred and sixty-one dollars and thirty-two cent» (§1661 32), with interest at the rate of live per cent per annum from the tenth of June, 1875, until paid, to be paid out of the funds or money in the hands of the association due and owing to George Cronan for work and labor done and materials furnished by him toward the building of St. Patrick’s Hall; and that Louis Schwartz pay the costs of defendant, the St. Patrick’s Hall Association, and of the intervenors,. George A. Eosdick & Co., in the District Court, and all the costs in this-court.